IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CEDRIC DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-932-WKW |
| | ) | [WO] |
| JEREMY BRIAN RAY and | ) | |
| AUBURN UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff Cedric Davis's motion to remand this action back to the Circuit Court of Montgomery County, Alabama.  (Doc. # 6.)  Defendant Jeremy Brian Ray, who removed the action on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446(b)(1), filed a response in opposition to the motion to remand.  (Doc. # 11.)  For the reasons to follow, the motion to remand is due to be granted.

## I.  BACKGROUND

This action arises from a two-vehicle collision on a major interstate in Montgomery County, Alabama.  On October 4, 2017, Ray, who was employed by Auburn University, was driving an SUV with a trailer attached.  According to the complaint, Ray was traveling too fast for the traffic conditions and, consequently,

collided with Davis's vehicle.  Davis sustained "severe injuries" to his "neck and back."  (Doc. # 1-1, at 3.)

On August 15, 2019, Davis commenced this action against Ray and Auburn University in the Circuit Court of Montgomery County.  Davis brings state-law claims against Ray for negligence and wantonness.  Regarding Auburn University, Davis alleges claims for negligent entrustment and negligent hiring, training, and supervision.  Davis also contends that Auburn University is liable under the doctrines of vicarious liability based upon a principal-agent relationship and *respondeat superior* based upon a master-servant relationship.  Davis makes an unspecified demand for compensatory and punitive damages.

Ray, as the only properly served defendant, timely removed this action, alleging that removal jurisdiction exists on the basis of diversity jurisdiction.  *See* §§ 1332(a), 1441(a), 1446(b).  Ray contends that Auburn University "is not a citizen of the State of Alabama for purposes of diversity jurisdiction," but even if it were, Auburn University "has been fraudulently joined as a defendant."  (Doc. # 1, at 1.) Davis has moved to remand this action.

Ray has demonstrated, and Davis does not dispute, that Davis is a citizen of Alabama and that Ray is not.  The points of contention focus on whether Auburn University's joinder destroys diversity of citizenship and whether the amount in controversy is met.

2

## II.  STANDARD OF REVIEW

On a motion to remand, the removing party bears the burden of proving that removal jurisdiction is proper.  *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).  Congress has empowered federal courts to hear cases removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally.  *See* § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Federal courts properly exercise diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and where the action is between citizens of different states.  *See* § 1332(a)(1).

## III.  DISCUSSION

Because Ray has not met his burden of demonstrating that the amount in controversy exceeds $75,000, the court need not decide whether Auburn University's joinder in this suit destroys complete diversity.  "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010).  In some cases, the requisite amount in controversy is "facially apparent from the complaint."  *Id.* at 754 (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).  In other cases, the removing defendant must "provide additional evidence demonstrating that removal is proper."  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

3

Ray contends that the amount in controversy is met based upon the combination of the complaint's allegations that Davis suffered "severe injuries" to his back and neck, of Davis's pre-suit written settlement demand for $350,000, and of the complaint's demand for punitive damages. Davis argues, however, that it is not facially apparent from the complaint that the amount in controversy is met and that Ray has not produced sufficient evidence to satisfy his removal burden. Davis has the better argument.

The amount in controversy is not facially apparent from the complaint. Compensatory and punitive damages are sought, but no monetary amounts are mentioned. Davis alleges that he sustained "severe injuries" to his neck and back as a result of the vehicle collision, (Doc. # 1-1, at 1), but he does not provide a hint as to the nature or duration of those "severe injuries." The unadorned allegations of severe injuries are inadequate for determining whether Davis's injuries are serious enough to place the amount in controversy above $75,000. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (holding, in a personal injury action, that "it [was] not facially apparent from Williams' complaint that the amount in controversy exceed[ed] $75,000" where the plaintiff alleged that she suffered "permanent physical and mental injuries," "incurred substantial medical expenses, suffered lost wages," "experienced a diminished earning capacity," and sought "general damages, special damages, and punitive damages in unspecified amounts"); *Lambeth v. Peterbilt Motors Co.*, No. CIV.A. 12-0169-WS-N, 2012 WL 1712692,

at *3 (S.D. Ala. May 15, 2012) (finding that the amount in controversy was not apparent on the face of the complaint because "[w]hile the back injury is characterized as 'serious,' nothing in the Complaint elaborates on the nature or severity of that injury, or otherwise lends substance or meaning to it" and "'serious' is such a general, subjective modifier that it reveals next to nothing about [the plaintiff's] injury").

The issue turns to whether counsel for Davis's pre-suit written settlement demand fills in the factual gaps. A court can consider a pre-suit settlement offer as evidence of the value of the case at the time of removal. *See Katz v. J.C. Penney Corp.*, No. 09-CV-60067, 2009 WL 1532129, at *4 (S.D. Fla. June 1, 2009) ("[A] district court may consider evidence outside of the removal petition if the facts therein existed at the time of removal," including "pre-suit settlement offers and demands") (citations omitted).

A settlement demand letter, "by itself, may not be determinative" of the amount in controversy, but "it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). "In determining what that 'something' is, courts draw distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other." *Montreuil as Next Friend of Z.M. v. Costco Wholesale Corp.*, No. 2:18CV706-MHT, 2020 WL 1243383, at *1 (M.D. Ala. Mar. 13, 2020) (citation and internal quotation marks

5

omitted). A settlement demand adds monetary weight to the amount in controversy "when it provides enough specific information to support the plaintiff's claim for damages to indicate that the offer is a reasonable assessment of the value of the plaintiff's claim." *Simpson v. Primerica Life Ins., Co.*, No. 2:15-CV-777-WKW-PWG, 2015 WL 9315658, at *9 (M.D. Ala. Dec. 3, 2015) (citation omitted), *report and recommendation adopted*, 2:15-CV-777-WKW-PWG, 2015 WL 9413876 (M.D. Ala. Dec. 22, 2015).

Based on the foregoing principles, the settlement demand letter does not tip the preponderance-of-the-evidence scales in Ray's favor. The letter lacks the level of specificity needed for the court to assess whether the $350,000 settlement offer is a reasonable and honest assessment of the value of Davis's claims. The demand letter, dated April 25, 2019, contains two pieces of information from which to gauge the reasonableness of the $350,000 demand. First, counsel for Davis represents that Davis had an "anterior cervical discectomy and fusion surgical treatment on March 12, 2019." (Doc. # 1-4 (Settlement Demand Letter).) Second, counsel represents that, although Davis "has been released from postoperative care," he "has not resumed his daily activities at this time." (Doc. # 1-4.) This information does not satisfy Ray's burden on removal.

To begin, the description of Davis's surgical treatment is not helpful for assessing the extent of Davis's injuries. The letter does not contain, and Ray has not submitted, information about what the surgery entailed, whether there were any

complications, whether Davis required physical therapy or other aftercare, or what Davis's projected long-term prognosis is. The letter's statement that "Davis has been released from postoperative care by Dr. Patrick Ryan" suggests that the surgery was successful. (Doc. # 1-4.) At the very least, there is no indication that his injuries are permanent.

The demand letter also does not include an itemization of the costs of the surgery or of Davis's out-of-pocket expenses. It provides only that counsel has requested "itemization from Blue Cross Blue Shield" but has not yet received that information. (Doc. # 1-4.) Additionally, the demand letter does not place a monetary value on Davis's inability to resume "daily activities" thirty-four days after his surgical treatment. (Doc. # 1-4.) There is no description of what those daily activities entail or when Davis likely would be able to resume those activities.

In sum, the demand letter does not explain why Davis chose $350,000 as a settlement figure or how Davis arrived at the $350,000 calculation. Based on the limited factual information in Davis's demand letter, the $350,000 settlement demand is more akin to puffery than to a reasonable valuation of Davis's case.

Those cases in which the court has found that a written demand letter contains a non-speculative, reasonable estimate of the value of the plaintiff's case underscore the deficiencies in Davis's demand letter for purposes of meeting Ray's burden on removal. *See Benandi v. Mediacom Se., LLC*, No. CIV.A. 11-00498-CG-N, 2011 WL 5077403 (S.D. Ala. Sept. 30, 2011), *report and recommendation adopted*, No.

CIV.A. 11-00498-CG-N, 2011 WL 5077108 (S.D. Ala. Oct. 24, 2011).  In *Benandi*, the $92,000 demand letter from the plaintiff's counsel described the multiple injuries to the plaintiff's leg, arm, back, and shoulder; itemized the medical charges; and provided a "conservative estimate" of the cost of anticipated surgery and postoperative care.  *See id.* at *3.  The demand letter also referenced and included the medical records from the plaintiff's treating physician.  Recommending the denial of the motion to remand, the court concluded that the plaintiff's demand letter "ha[d] provided a non-speculative basis for quantifying the value of his claim, which allow[ed] for more than mere speculation with respect to the amount in controversy." *Id.*; *see also Golden Apple Mgmt. Co. v. Geac Computers, Inc.*, 990 F. Supp. 1368 (M.D. Ala. 1998) (giving significant weight to the plaintiff's settlement demand where the plaintiff's letter included specific details, such as a statement that damages included "software costs, consultant costs and personnel costs which amount to $105,432").

Finally, the request for punitive damages does not demonstrate, either singularly or in combination with the complaint's vague allegations, that the amount in controversy exceeds $75,000.  *See Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010) ("Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases.") (citing *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)).  "[T]here is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy

requirement and trigger federal subject-matter jurisdiction." *Lambeth*, 2012 WL 1712692, at *4. Under Alabama law, "[p]unitive damages are not awarded because the injured party is entitled to them as a matter of right; they are awarded as a punishment to the wrongdoer and to deter him and others in the same or similar situation from such wrongdoing in the future." *City Bank of Alabama v. Eskridge*, 521 So. 2d 931, 933 (Ala. 1988); *see also* Ala. Code § 6-11-20 (defining "wantonness," for purpose of punitive damages, as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others").

The court cannot assess the value of Davis's punitive damages request in a factual vacuum. The demand letter does not mention the potential for the recovery of punitive damages or refer to Defendants' alleged wrongful conduct. Additionally, the complaint does not contain any non-conclusory allegations describing Defendants' wanton behavior. (*See, e.g.*, Doc. # 1-1, at 4 (Ray "operated her [sic] vehicle in such a reckless and wanton manner as to cause said vehicle to collide with the car driven by Plaintiff and for Plaintiff to suffer and sustain injuries . . . ."). Ray bears the burden of answering the question of "what th[e] punitive damages are likely to be." *Howell v. Fields Realty, LLC*, No. 2:08-CV-492-WKW, 2008 WL 2705383, at *2 (M.D. Ala. July 10, 2008) (citation and internal quotation marks omitted) (collecting cases). That question in this case has gone unanswered. Accordingly, the court cannot estimate the value of Davis's punitive damages request without engaging in speculation.

9

## IV. CONCLUSION

Based on the foregoing, Ray has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. Accordingly, it is ORDERED as follows:

(1)     Plaintiff's motion to remand (Doc. # 6) is GRANTED;

(2)     This action is REMANDED to the Circuit Court of Montgomery County, Alabama; and

(3)     The Clerk of the Court is DIRECTED to take all steps necessary to effectuate the remand.

DONE this 20th day of April, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE